AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

**ORIGINAL**

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>LEO HU a/k/a LI-OU WU a/k/a MENG-TING HU a/k/a JEFF HSIAO | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>19 MJ02195 |

FILED
CLERK, U.S. DISTRICT COURT
MAY 23 2019
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

Complaint for violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE ROZELLA A. OLIVER | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>Rowland Heights, California |
|---|---|---|

| DATE OF OFFENSE<br>May 22, 2019 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)]

On or about May 22, 2019, in Los Angeles County, California, within the Central District of California, defendant LEO HU a/k/a LI-OU WU a/k/a MENG-TING HU a/k/a JEFF HSIAO knowingly possessed with the intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii)

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge.

| SIGNATURE OF COMPLAINANT<br>PAUL W. COX |
|---|
| OFFICIAL TITLE<br>Special Agent – FDA-OCI |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[(1)] | DATE<br>May 23, 2019 |
|---|---|

[(1)] See Federal Rules of Criminal Procedure 3 and 54

AUSA Michael G. Freedman X0631     REC: Detention

## AFFIDAVIT

I, Paul Cox, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for LEO HU a/k/a LI-OU WU a/k/a MENG-TING HU a/k/a JEFF HSIAO for a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii), possession with intent to distribute in excess of 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

### II. BACKGROUND FOR SPECIAL AGENT COX

2. I am a Special Agent for the Food and Drug Administration-Office of Criminal Investigations ("FDA-OCI"). I am currently assigned to the Kansas City Field Office, and am the Seized Computer Evidence Recovery Specialist/Computer Forensics Agent for the Kansas City Region. My current duties include investigating violations of the Federal Food Drug and Cosmetic Act and other violations of the United States Criminal Code. I have been employed as a Special Agent since November 2012.

3. Prior to my current position with FDA-OCI, I was employed as a Special Agent with the Department of Health and Human Service ("HHS") Office of Inspector General Computer Crimes Unit, stationed at the Centers for Disease Control and Prevention and the HHS Computer Security Incident Response

Center, and prior to that I was a Special Agent with the National Aeronautics and Space Administration-Office of Inspector General ("NASA-OIG") Computer Crimes Division, stationed at the Jet Propulsion Laboratory.

4. I am a graduate of the following training programs: Criminal Investigator Training Program and the Seized Computer Evidence Recovery Specialist Program at the Federal Law Enforcement Training Center (2013), Inspector General Criminal Investigator Academy (2014), HHS Special Agent Basic Training Program (2016), and the FDA-OCI Special Agent Training Program (2018).

5. During my career, I have received specialized training in the investigation of computer crimes, combating the distribution of child pornography, the performance of digital forensics, and investigating the sale of counterfeit, adulterated, and misbranded drugs. Additionally, I have presented training to other federal law enforcement officers in the United States on the topic of cyber investigations and have presented training on the investigation of the online sale of counterfeit drugs to international law enforcement officials at the Interpol Global Complex for Innovation in Singapore. Through the course of my duties, I have conducted numerous investigations into the distribution of counterfeit, misbranded, and adulterated drugs and controlled substances via the dark web and United States Postal Service, and personally executed approximately 30 undercover purchases of drugs via the dark web in exchange for cryptocurrency. Through the course of my duties

I have participated in the execution of numerous search warrants.

6. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel (collectively referred to as "Agents") and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. SUMMARY OF PROBABLE CAUSE

7. The FDA-OCI is investigating the distribution of adulterated and counterfeit amphetamine-based prescription drugs on a Darknet[1] Marketplace known as the Dream Market.

8. Beginning in or about April of 2018 FDA-OCI, and other investigating agencies, began conducting undercover purchases of tablets of purported Adderall from a darknet vendor, (referred to in this affidavit as "VENDOR-1"), on various darknet marketplaces. Laboratory analysis of the tablets delivered to the addresses provided at the time of the undercover purchases show that the purported Adderall were in fact counterfeit, and

---

[1] The term Darknet Marketplace refers to commercial websites that operate on darknets like Tor. Tor and other darknets are networks of computers that utilize some of the same architecture of the Internet, but which provide greater anonymity and the obfuscation of user identities. Because of this anonymity, Darknet Marketplaces are commonly used to facilitate illegal transactions involving, among other things, drugs.

contained methamphetamine. Through the course of the investigation various postage, email and financial accounts were identified as being utilized in the furtherance of the distribution of the methamphetamine and linked to LEO HU, including numerous accounts established using fraudulent identity documents bearing HU's likeness and the name and personally identifiable information of another individual, believed to be a victim (referred to as "VICTIM-1"). Investigation of online accounts show that HU, using his true name or fraudulently using the VICTIM-1 identity, purchased various supplies and equipment used for the manufacture of counterfeit drugs, including counterfeit Adderall containing methamphetamine. HU further utilized various financial accounts, in his true name or fraudulently utilizing the VICTIM-1 identity, to receive large quantities of the same cryptocurrency (bitcoin) used to purchase methamphetamine from VENDOR-1. HU utilized these financial accounts to convert this cryptocurrency into U.S. currency, and then utilize some of this U.S. currency for the purchase of postage.

9.   During surveillance of HU, Agents observed HU transferring boxes at numerous times to and from individuals including an unnamed co-conspirator ("CC-1"). CC-1 was subsequently observed depositing parcels at a USPS facility. A subsequent search of the parcels deposited into the mail stream by CC-1 revealed counterfeit Adderall containing methamphetamine.

10. On May 22, 2019, agents searched HU'S house pursuant to a federal warrant and recovered, among other items, a pill press, various punches and dies, a large quantity of pills that agents know to be far in excess of 500 grams. Both the powder and a pill were field tested and both tested positive for methamphetamine.

## IV. STATEMENT OF PROBABLE CAUSE

11. Based upon my discussions with other law enforcement officers, my training and experience, and my review of reports, I know the following facts.

### A. Use of Stamps.com to Purchase Postage to Distribute Methamphetamine

12. From a series of undercover purchases, I have learned that drugs sold by VENDOR-1 are, in many instances, sent to buyers through the United States Postal Service ("USPS").

13. Over the past six months, FDA-OCI, working with the Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI"), the United States Postal Inspection Service ("USPIS"), and Homeland Security Investigations ("HSI") has been investigating amphetamine-based prescription drugs advertised and sold on Darknet Marketplaces, and distributed using through the USPS.

14. During the course of this investigation, Agents operating in an undercover capacity have made purchases of drugs from an unknown person or persons using the moniker VENDOR-1 on the Dream Market. VENDOR-1 has made numerous listings for amphetamine-based prescription drugs available for sale, without

a prescription, in exchange for bitcoin cryptocurrency. A review of open-source intelligence related to VENDOR-1, reviews found on the Dream Market vendor page associated with VENDOR-1[2], and discussions with other agents familiar with the investigation indicate that an individual or individuals utilizing the VENDOR-1 moniker has been operating on multiple Darknet Marketplaces[3] since at least 2017, is responsible for more than 28,000 individual sales on Dream Market alone, and is estimated to have grossed in excess of $8.8 million in sales.

15. On four occasions in April, May, and November 2018, agents from FDA-OCI made undercover purchases of prescription amphetamine drugs from VENDOR-1 on the Dream Market in exchange for Bitcoin cryptocurrency. In each instance, a package was delivered to the undercover agents at the address provided at the time of purchase, and the contents of these purchases appeared consistent with what was advertised for sale on the Dream Market: amphetamine-based prescription drug tablets,

---

[2] From my training and experience, I know that Darknet Marketplaces, and the Dream Market in particular, resemble other legitimate e-commerce websites like Amazon or eBay in many respects. For example, customers who purchase items from vendors on the Dream Market can leave reviews for their transactions. These reviews and the good or bad reputation associated with them are one of the few metrics that allow potential customer of illicit goods or services to anticipate the likelihood that the anonymous seller will complete the transaction.

[3] From my training and experience, I know that monikers on the Dream Market are unique, and thus the sales attributed to VENDOR-1 on Dream Market are likely to all have involved the same individual or individuals using that moniker. I also know that it is common for one seller or seller group to sell on multiple Darknet Marketplaces using the same moniker in order to maintain the goodwill and trust associated with their online vendor identity.

orange in color, bearing pill markings consistent with prescription amphetamine-based drugs, specifically Adderall. All of these drugs were purchased without prescriptions. Preliminary laboratory testing by the FDA Forensic Chemistry Center indicates that the drugs received do not contain the active pharmaceutical ingredient contained in Adderall, but in fact contain methamphetamine.

16. A review of the postage found on all three of the undercover purchases shows that they are pre-printed postage purchased through Endicia, a subsidiary of Stamps.com.

17. Analysis of the information associated with the Stamps.com account used to ship the parcels containing methamphetamine led Agents to identify HU as the true account holder of the Stamps.com account.

### B.  MAY 20, 2019 SURVEILLANCE AND SEIZURE OF PARCELS

18. On May 20, 2019 at approximately 15:27, agents conducting surveillance of a residence ("RESIDENCE-1") in the area of Rowland Heights, California observed CC-1 through the open garage door of garage attached to the residence and place a large plastic tote, dark in color, into the cargo area of a vehicle.

19. At 15:52, agents observed CC-1 travel to the area of the City of Industry Post Office, located at 15421 Gale Ave, Industry, CA 91715. Agents observed CC-1 enter the Post Office Business Mail Entry Unit (BMEU). CC-1 was observed depositing numerous USPS Priority Mail envelopes into a USPS-owned bin from the dark tote.

20. Agents subsequently secured the bin and retrieved eighty-seven (87) USPS Priority Mail envelopes from the bin. The parcels were found to bear Stamps.com postage bearing meter # 11551888 and return address Tyler V. Vice Communications 11427 Bradhurst Street Whittier, CA 90606.

21. Stamps.com meter # 11551888 is the same meter number associated with postage found upon parcels purchased by undercover law enforcement officers, which was later found to contain methamphetamine.

22. On May 21, 2019, the Honorable Steve Kim, United States Magistrate Judge for the Central District of California, authorized a search warrant for the eighty-seven (87) seized parcels. A search of the eighty-seven (87) parcels revealed approximately 1.573 kg of tablets in total, peach in color, oval in shape, and bearing pill imprint "b 974" on one side and "30" and a half tablet score on the reverse. These pills are consistent with the tablets previously purchased by undercover agents which laboratory testing revealed contained methamphetamine. A field test of a sample of the tablets found within these parcels presented a presumptive positive for methamphetamine.

23. On May 21, 2019, the Honorable Steve Kim, United States Magistrate Judge for the Central District of California, authorized a search warrant for RESIDENCE-1.

24. On May 22, 2019, Agents executed the search warrant at RESIDENCE-1 and encountered CC-1, the sole occupant of the house, in the hallway. During a subsequent search of RESIDENCE-

1, Agents located a large quantity of pills matching the description of those seized the previous day. Agents know the weight of the seized pills to be in far in excess of 500 grams.

25. Agents advised CC-1 of Miranda warnings and CC-1 agreed to speak with Agents. CC-1 advised Agents in substance and in part, that he was involved with at least one other individual in a scheme to distribute the pills by mail, and that he had packaged and dropped the pills observed by Agents on May 20, and that he had received the pills currently in RESIDENCE-1 from HU.

26. On May 21, 2019, the Honorable Steve Kim, United States Magistrate Judge for the Central District of California, authorized a search warrant for a residence (referred to as RESIDENCE-2") associated with HU.

27. On May 22, 2019, Agents executed the search warrant at RESIDENCE-2 and encountered HU inside the premises, who fled out the back door of RESIDENCE-2 through numerous neighboring houses and was arrested a short distance away.

28. Inside the premises of RESIDENCE-2, Agents recovered, among other items, a pill press, various punches and dies, a large quantity of pills, in similar characteristics those recovered from the packages referenced above and from RESIDENCE-1, that Agents know to be far in excess of 500 grams, and a large quantity of powder. Agents field tested a pill and powder, and both tested positive for methamphetamine.

29. Agents advised HU of Miranda warnings and he agreed to speak with Agents. HU advised Agents, in substance and in part,

that he was in the process of re-manufacturing the pills that were in RESIDENCE-2 with more methamphetamine, and that he operated with CC-1 to coordinate the distribution of pills containing methamphetamine through the USPS, and that CC-1 would deliver the packages to postal facilities in the Central District of California. HU also advised that he primarily lives in Taiwan, and was planning to return to Taiwan on or about Saturday, May 25, 2019.

## V.     CONCLUSION

30. For all the reasons described above, there is probable cause to believe that or about May 22, 2019, HU violated Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii), possession with intent to distribute in excess of 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

PAUL W. COX, Special Agent
Food and Drug Administration
Office of Criminal Investigations

Subscribed to and sworn before
me on May 23, 2019.

HONORABLE ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE